ARMED SERVICES BOARD OF CONTRACT APPEALS

| | |
|---|---|
| Appeal of -- | ) |
| | ) |
| Black Tiger Company | ) ASBCA No. 59819 |
| | ) |
| Under Contract No. W91GXE-11-P-0083 | ) |

APPEARANCE FOR THE APPELLANT:          Mr. Kadhom Husein Faraj
                                       Owner

APPEARANCES FOR THE GOVERNMENT:        Raymond M. Saunders, Esq.
                                       Army Chief Trial Attorney
                                       MAJ Elinor J. Kim, JA
                                       Trial Attorney

OPINION BY ADMINISTRATIVE JUDGE PAGE

Black Tiger Company (appellant or Black Tiger) appeals from a deemed denial of its claim seeking $1,368,095 based upon an alleged contract with the United States CENTCOM Contracting Command (the government) to deliver heavy construction equipment to Tallil Air Base, Iraq. In a previous decision, *Black Tiger Company*, ASBCA No. 59189, 16-1 BCA ¶ 36,423, we denied the government's motion to dismiss this appeal for lack of jurisdiction, holding that triable issues remained regarding the existence of a contract, precluding dismissal. *Id.* at 177,570-71. The government requested submission of this appeal on the record, pursuant to Board Rule 11. The Board attempted to contact appellant to inquire as to its position regarding a Board Rule 11 decision, and whether it intended to file a brief. The 3 November 2016 scheduling order directed the parties that "Any filing not made in a timely manner may be deemed waived." It cautioned the parties that "Following the filing date for reply briefs," which was set as 27 July 2017, "the record in this appeal will be deemed closed and the appeal ready for decision without further notification from the Board." Appellant has not responded to the Board's orders, and we rule upon the record as of 27 July 2017. We decide entitlement only, and deny this appeal.

FINDINGS OF FACT

1. This appeal arises from alleged Contract No. W91GXE-11-P-0083 (alleged contract) between the government and appellant. The alleged contract has an effective date of 5 December 2010, although the signature date is listed as 7 December 2010. (R4, tab 1 at 1)

2. The alleged contract purportedly calls for the delivery of heavy construction equipment, consisting of two John Deere graders and three bulldozers, to Tallil Air Base, Iraq, on 29 December 2010 (R4, tab 1 at 3-4).

3. By email dated 3 February 2015, appellant submitted a certified claim for $1,368,095 to Ramena Gabriel, Contract Specialist, Reachback Closeout Division, U.S. Army Contracting Command, Rock Island, Illinois (ACC-RI), alleging that it had not been paid for performance of the contract (R4, tab 5 at 1, tab 7).

4. By email dated 5 February 2015, appellant filed a notice of appeal with the Board stemming from the 3 February 2015 certified claim for $1,368,095. The Board docketed the appeal as ASBCA No. 59819 on 6 February 2015. As noted in the Board's prior decision, although the notice of appeal was filed only 48 hours after appellant submitted a claim to the contracting officer (CO), the government was not requesting that appellant refile the notice of appeal to timely comply with the rules, as more than 60 days had elapsed since the date of claim submission. *Black Tiger Company*, 16-1 BCA ¶ 36,423 at 177,570, SOF ¶ 5.

5. As part of the notice of appeal, appellant submitted the following documents: (1) an alleged invoice for Iraqi Dinar (IQD) 1,532,266,400; (2) the first page of the alleged contract; (3) a certification for the claimed amount totaling $1,368,095; (4) email exchanges between appellant and Ms. Gabriel, beginning on 20 January 2016, in which she denied the existence of the contract; and (5) an email dated 3 February 2015 from "Meelondrell," sent from a Gmail email address (email address No. 1), that stated "It is unacceptable that you did not get paid for this contract." Appellant alleges that the last email was sent by a contracting officer's representative (COR) named "Meelondrell," "Meelondrell Park," "Meelondrell Park-Link," or "Meelondrell Park-Laink" (Notice of Appeal at 10-11; R4, tab 1 at blocks 14, 29, tab 3 at block 13, tab 7, tabs 9-10)

6. By declaration dated 10 March 2015, CO Thomas A. Petkunas asserted that he executed a "comprehensive search" of various government contract retrieval and archival systems for any records related to the alleged contract. No documents were found. (R4, tab 8 at 1)

7. By email dated 10 March 2015, CO Petkunas emailed the alleged COR "Meelondrell Park" at email address No. 1, requesting additional documentation for the alleged contract. CO Petkunas also requested that Ms. Park contact him via telephone or through her government email address to discuss the matter further. (R4, tab 9 at 4)

8. An individual representing herself to be "Meelondrell Park" from email address No. 1 responded to CO Petkunas's correspondence in an email dated 15 March 2015. She stated that she was in China, no longer in the military, and did not have

2

access to a government (.mil) email account. The individual responding insisted that she was the COR of the alleged contract, and that she had received the "heavy equipments [sic]." The writer offered to provide a declaration attesting to her identity and knowledge of the contract. (R4, tabs 1-3, tab 9 at 2)

9. By email dated 17 March 2015, the individual representing herself to be Meelondrell Park sent CO Petkunas three documents from email address No. 1. The documents included: (1) the alleged contract, Standard Form 1449, Contract No. W91GXE-11-P-0083, which included 36 pages. It had an effective date of 5 December 2010 and was signed by the purported CO on 7 December 2010; (2) a notice of award, dated 7 December 2010 (notice of award); and (3) a DD Form 250, Material Inspection and Receiving Report, dated 4 January 2011 (DD Form 250). (R4, tabs 1-3, tab 9 at 2)

10. In emails dated 18 March 2015 and 23 March 2015, CO Petkunas requested the individual responding from email address No. 1 verify her identity by providing her social security number, as well as contact information for her department, supervisor, or a coworker who could vouch for her. The individual responding from email address No. 1 never replied to the requests for identity verification. (R4, tab 9 at 1)

11. The documents provided in the 17 March 2015 email from email address No. 1 identify three individuals who allegedly worked on the contract throughout its award and performance: Boyce Haywood, Rebecca Ann Riddick, and Meelondrell Park-Laink. Mr. Haywood's name was included on the notice of award, along with his supposed signature, where his title was listed as CACI Support Contractor (R4, tab 2), a similar signature also appeared on block 7a of the SF 1449 (R4, tab 1 at 1). Ms. Riddick's name, title as CO, and signature appeared on the notice of award and SF 1449 (R4, tab 1 at 1, tab 2). Ms. Park-Laink's name was listed as the COR several times in both the SF 1449 and DD Form 250 (R4, tab 1 at 29, tab 3 at 1). The forms listed her rank as Staff Sergeant and her point of contact email address as email address No. 1 (R4, tab 1 at 29).

12. By declaration dated 7 April 2017, Mr. Haywood stated that from December 2009 to December 2010, he worked as a contractor with CACI Dynamic Systems, Inc., for the United States Department of Defense (DoD) at Tallil Air Base, Iraq (R4, tab 14 at 1). To the best of his memory, Mr. Haywood did not sign or authorize anyone to sign the notice of award provided by email address No. 1 on his behalf (id.). In support of this statement, Mr. Haywood noted that he was not physically present in Tallil, Iraq on 7 December 2010, when he allegedly signed the notice of award, as he was on leave in North Carolina. He stated it was his practice to date a document as the date he actually signed it. (Id.) Mr. Haywood provided his leave approval form, which confirms his declaration that he was not in Tallil, Iraq from 6 December 2010 to 10 January 2011 (R4, tab 13). Additionally, although

3

Mr. Haywood recalled working with Ms. Riddick while in Tallil, Iraq, he did not recall working with anyone named Meelondrell Park-Laink, Meelondrell Parks-Laing, or Meelondrell Parks (R4, tab 14 at 1).

13. By declaration dated 18 April 2017, Technical Sergeant (TSgt) Rebecca Ann Ransome, formerly known as Rebecca Ann Riddick, stated that although a copy of her signature appeared on the notice of award and SF 1449 that was provided by appellant, she did not sign those documents or authorize anyone to do so on her behalf (R4, tab 16 at 1). In addition, given her 14 years of experience in the contracting field, TSgt Ransome questioned the authenticity of the alleged contract and notice of award and noted numerous inconsistencies in documents proffered by Black Tiger and unlikely practices as compared to standard government procurement. She stated:

> I question the authenticity of the SF 1449 based on the following:
>
> a. Our contract writing database system that we referred to as "PD2" used the same font throughout any contracting document. In several of the blocks on page one of the SF 1449, the font is different.
>
> b. On page 1, block 3, the award effective date is before the award signed date in block 31c. This is not a common practice and I highly doubt this is an error done by me and something that the system would alert me of prior to approving and releasing the award.
>
> c. On page 1, block 10, the table is disproportioned, the 7th line down reading "SVC-DISABLED VET-OWNED SB" is overlapping block 13b. The proportions never change no matter how many characters are entered. The system takes information from the data entered into PD2 and places it in those blocks and always maintains the same format. This is not consistent.
>
> d. On page 1, block 15, the "delivery to" customer is "407 ECES," which stands for the 407 Expeditionary Civil Engineer Squadron. However, on page 4, the delivery customer referenced is "1ERHG," which stands for the 1st Expeditionary Red Horse Group. At the time, 1ERHG was not stationed with us at Tallil AB.

4

e.     On page 3, Item No 0001, the purchase request number F3UUAR091A322 is not consistently used throughout SF 1449 as it should be and the sequence number is incomplete. The purchase request number consists of the Department of Defense Activity Code ("DODAAC") (6 position code), Julian date (4 digits), document type (2 position code), and sequence number (2 digits) totaling 14 letters or digits. On page 3, an incorrect sequence code for the purchase request number is listed twice.

f.     On page 4, Accounting and Appropriation Data, the first series of numbers is 5714400. The 57 signifies Air Force, the 1 signifies the last number of the fiscal year, and then the remaining 4 numbers signify what type of money (i.e. O&M (Operation & Maintenance), MILCON (Military Construction), etc.). In Air Force Manual 65-604 (Financial Management), there is no supporting significance of 4400.

g.     On page 4, Accounting and Appropriation Data, at the end of the long line of accounting number [sic], there is yet another referenced purchase request number (F3UTA85571H001) with an incorrect Julian date of 5571. There are only 365 days in a year; this number is incorrect.

h.     On page 4, Accounting and Appropriation Data, the "CIN" numbers referenced are different despite the same purchase request number.

i.     On page 29, block 7, it appears a personal email, [email address No. 1] is provided as a point of contact. We would not have used personal email account to administer contracts. We used government email addresses on official contracting documents in an established base such as the one we were at.

j.     PD2 knows that when a requirement goes from solicitation to award, certain inapplicable clauses fall-off in the contract to include: 52.212-1 Instructions to Offerors (by reference), and 52.212-2 Evaluation—Commercial Items (by full text), and 52.212-3 Offeror Representations and Certifications – Commercial Items (by full text), which remain in the alleged awarded contract.

5

I question the authenticity of the aforementioned MFR regarding the notice of award based on the following.

a. During my deployment, I do not recall awarding a contract to Black Tiger Company or otherwise working with this contractor.

b. During my deployment, I do not recall issuing an award through a notice of award in the format as it appears in the enclosed MFR. If there was a MFR, the contractor would not have a copy of it as it would be in the government contract file.

c. If I had drafted the MFR or before I would have signed it, I would have indicated or required the contractor's entire address and contact information to include the full name of the person who represented the company that was awarded the contract.

d. The alleged MFR references a "$" symbol and numbers following to signify U.S. dollars. If I had written a contract amount in a foreign currency as reflected in the SF 1449, I would have annotated the foreign currency in the MFR for consistency.

e. The alleged MFR states that the Purchase Order was issued on 6 December 2010. However, the SF 1449 states the award date was on 5 December 2010 and the date signed by the Contracting Officer was on 7 December 2010. For a commercial commodity, the date signed and effective date would be the same date.

f. The "7" in the date is a different font/size than the rest of the date and at a different height.

g. The contract number in the middle of the page is in a different font than the rest of the sentence.

h. I would have had major concerns with the last paragraph that requests Black Tiger Company to acknowledge receipt to Mr. Haywood who is also a contractor and does not include the Contracting Officer or another government employee. It would have been bad business to have a contractor be the single point of contact for this acquisition and not have any government employees in the loop. This is not a practice I would have condoned.

6

i.  The very last sentence states, "Thank you for submitting your quote." This is inconsistent with the purpose of the alleged notice of award. Quotes come before awards.

(R4, tab 16 at 2-3)

14. From 4 July 2010 until 5 January 2011, TSgt Ransome was deployed to Tallil Air Base, Iraq, as a CO for United States CENTCOM Contracting Command, Regional Contracting Center. During that time, TSgt Ransome recalled working with Mr. Haywood as a CACI DoD contractor, but she did not recall working with anyone named Meelondrell Park-Laink, Meelondrell Parks-Laing, or Meelondrell Parks. (R4, tab 16 at 1-2)

15. In a declaration dated 17 April 2017, Meelondrell T. Lumpkin, formerly known as Meelondrell T. Parks-Laing from 2010-2011, stated that during that period she was a Master Sergeant in the United States Air Force who was deployed as a CO, not a COR, to support the Combined Forces Special Operations Component Command at Al Udeid, Qatar. She was never assigned to Tallil Air Base, Iraq, and did not travel to Tallil at any time during her deployment. (R4, tab 15 at 1) Ms. Lumpkin declared that she did not sign the DD Form 250 that was sent from email address No. 1 to CO Petkunas, nor did she authorize anyone to sign the form on her behalf, as it was not part of her responsibilities or practice to sign DD Form 250s. Ms. Lumpkin did not use, and has never been affiliated with, email address No. 1. (*Id.*) She stated that she never worked on the alleged contract, and she did not know or ever work with TSgt Riddick or Mr. Haywood (*id.* at 2).

16. Appellant did not file a Rule 11 brief or provide any evidence in response to the declarations. The last communication from appellant to the Board was on 15 April 2016, requesting an update on the status of the motion to dismiss decision. The last communication from the Board to the parties reminded them on 24 July 2017 of the requirements of the Rule 11 briefing schedule, transmitted to appellant a copy of the government's initial brief, and advised Black Tiger that the Board had not received a Rule 11 brief from appellant.

## DECISION

*The Parties' Positions*

Appellant's complaint alleges that on 5 December 2010, Black Tiger was awarded Contract No. W91GXE-11-P-0083, to deliver heavy equipment to Tallil Air Base, Iraq

7

(findings 1-2). Appellant claims that it delivered the equipment, but was never paid for performance of the contract (finding 3).

The government contends that no contract ever existed between appellant and the government, and that no equipment was delivered. To support its position, the government provides numerous declarations under oath from the individuals whom appellant alleges were involved in the contract award and performance (findings 12-15).

*Discussion*

Board Rule 11 allows the parties to submit an appeal for decision on the record. The Board has discretion to determine the weight given to any evidence in the appeal. Board Rule 11(d). When appropriate while deciding an appeal under Rule 11, the Board may rely on the documents contained in the Board's file. Board Rule 11(b). Here, because appellant did not submit a Rule 11 brief, the Board will rely on documents submitted throughout the course of this appeal.

Under the Contract Disputes Act (CDA), the Board possesses jurisdiction to hear appeals "from a decision of a contracting officer...relative to a contract made by that department or agency." 41 U.S.C. § 7105(e)(1)(A). The Federal Acquisition Regulation (FAR) 2.101 defines a contract as: "[A] mutually binding legal relationship obligating the seller to furnish the supplies or services (including construction) and the buyer to pay for them. It includes all types of commitments that obligate the Government to an expenditure of appropriated funds and that, except as otherwise authorized, are in writing." "The Board's jurisdiction under the CDA is predicated upon an 'express or implied contract' between a contractor and the government." *ASFA Construction Industry and Trade, Inc.*, ASBCA No. 57269, 15-1 BCA ¶ 36,034 at 176,004 (citing 41 U.S.C. § 7102(a)). The initial burden of proof is upon the party asserting a right, in this case, appellant. *Universal Yacht Servs., Inc.*, ASBCA No. 53951, 04-2 BCA ¶ 32,648 at 161,577 (citing *Total Maintenance, Inc.*, ASBCA No. 30450, 88-1 BCA ¶ 20,393 at 103,153).

The government has provided specific and credible evidence in the form of declarations from the personnel upon whom appellant relies in making its case which plainly demonstrate that the government had no contract with Black Tiger and that the documents submitted by Black Tiger to prove the existence of the contract were not authentic. The Board finds the statements made in the declarations of Boyce Haywood, TSgt Rebecca Ransome, and Meelondrell Lumpkin persuasive and of great weight. Appellant has offered no evidence or made any argument to rebut these declarations. Without such evidence, and in the face of probative government documents to the contrary, appellant has not met its burden of proof, and relief will not be granted.

8

## CONCLUSION

Black Tiger failed to establish the existence of a valid government contract to underpin this appeal. Moreover, appellant has failed to rebut credible evidence that a contract did not exist between the parties. Without the existence of a contract, appellant cannot meet the requisite burden of proof to establish that it is entitled to relief in this matter. The appeal is denied.

Dated: 3 May 2018

REBA PAGE
Administrative Judge
Armed Services Board
of Contract Appeals

I concur

RICHARD SHACKLEFORD
Administrative Judge
Acting Chairman
Armed Services Board
of Contract Appeals

I concur

J. REID PROUTY
Administrative Judge
Vice Chairman
Armed Services Board
of Contract Appeals

I certify that the foregoing is a true copy of the Opinion and Decision of the Armed Services Board of Contract Appeals in ASBCA No. 59819, Appeal of Black Tiger Company, rendered in conformance with the Board's Charter.

Dated:

JEFFREY D. GARDIN
Recorder, Armed Services
Board of Contract Appeals

9